TED GARDNER V. THE STATE.

No. 7194. Decided January 24, 1923.

**Misdemeanor Theft—Insufficiency of the Evidence.**
Where, upon trial of misdemeanor theft, the evidence was insufficient to support the conviction, the judgment must be reversed and the cause remanded.

Appeal from the County Court of Fisher. Tried below before the Honorable W. C. Martin.

Appeal from a conviction of misdemeanor theft; penalty, a fine of $25.

The opinion states the case.

*Beall, Beall & Beall,* for appellant.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the County Court of Fisher County of misdemeanor theft, and his punishment fixed at a fine of $25 and thirty days confinement in the county jail.

Dr. Callan lived in Rotan, Fisher County, and practiced medicine. He owned a farm which was run by his son Rush. Where the farm was located, whether ten miles or twenty miles from Rotan, or whether in Fisher County at all, is not shown in this record, and whether Rush Callan was fifty years old or fifteen, is not revealed. Two horse collars, forming the subject of the theft here charged, were brought by Dr. Callan about November 1, 1921, and turned over to Rush for use on the farm, where they were taken and used. Rush testified that on the night of December 9th following, he hung the collars in a harness house and when he went to get them the next morning they had disappeared. There were tracks leading from the road to said harness house and back. Automobile tracks were in the road. No attempt to describe or identify the tracks was made. Two weeks later said collars were found by the sheriff of Scurry County, which joins Fisher on the west. He found them in the town of Hermleigh in a garage, which he testified belonged to Mrs. M. F. Gard-

her.   Who Mrs. M. F. Gardner was or the pertinence to the guilt of appellant of finding the collars in her garage, is not revealed.   If she was in any way related to appellant, or if he lived with her, or was a married man and had an establishment of his own, are all facts upon which the record is entirely silent.   After finding these collars the officer testified that he went to a depot in said town and there saw appellant and told him what he had found in said garage, and asked him what he knew about them.   Appellant replied that he knew nothing at all, that he did not know how they came there, or anything about them.   The officer took said collars away and turned them over to the sheriff of Fisher County, who in turn delivered them to Dr. Callan.   A Mr. Wilhite testified that he saw appellant and his brother in Rotan on the afternoon of December 9th and asked them to take supper with him but that appellant's brother informed him that they had not time as they were going to Roby.   He further stated that he saw them on the street again about 9 or 10 o'clock that night. He did not know who was with them, nor how they were traveling. Roby is in Fisher County southeast from Rotan.

The facts do not support the verdict.   No one saw appellant in possession of the collars, or in the neighborhood of Dr. Callan's farm. The tracks of the supposed thief were not shown even by suggestion to be his.   Just how the finding of collars in the garage of a Mrs. M. F. Gardner could be held to support any claim of possession on the part of appellant, is not clear to us.   It is laid down by all the authorities in this State that when an inference of guilt or theft of property is sought to be deduced from the fact of its possession by one accused of such theft, such possession must be personal, recent, unexplained and must also involve a distinct and conscious assertion of such possession by the accused.   See Sec. 2463 of Mr. Branch's Ann. P. C. for authorities.   Not only is no possession of such collars shown in the instant case, but no juxtaposition to such property is made to appear.   There is not a word of testimony in support of the theory that appellant had ever been in the garage or on the premises of Mrs. M. F. Gardner where the collars were found.   Another proposition: For six weeks prior to their loss said collars had been in the care, and control of Rush Callan on the farm of his father, which he was running.   He testified that during that time he had the actual care and control of said collars and that his father had no control over them at all after they were turned over to him.   Dr. Callan did not dispute this statement in any way.   These facts do not support an allegation of ownership of the collars in Dr. Callan.   It is not attempted to be shown that Rush Callan was a minor or that he was a hired hand. Dr. Callan, being the alleged owner, does not testify either that he now owned said collars or that he had the care, control and management of them, but on the contrary Rush Callan testified that he had the care, control and management of said property to the exclusion

of that of his father, and the other facts seem to support this theory.

Finding no evidence in the record to support the judgment of conviction, a reversal is ordered.

*Reversed and remanded.*